IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02569-WDM-KLM

CLAYTON B. PHILLIPS,

Plaintiff,

v.

ROBERT STEINBECK, Lieutenant for the Colorado Dept. of Corrections,
      Individually and in His Official Capacity, and
TIMOTHY RITTER, Lieutenant for the Colorado Dept. of Corrections,
      Individually and in His Official Capacity,

      Defendant(s)

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Defendants' Motion to Dismiss** [Docket No. 38;

filed July 2, 2007] and **Defendants' Memorandum Brief in Support of Motion to

Dismiss** [Docket No. 39] ("Motion to Dismiss").  Plaintiff filed a Response to Motion to

Dismiss and Memorandum Brief in Response to Motion to Dismiss [Docket Nos. 60,61;

filed August 24, 2007].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R.

72.1.C. the matter has been referred to this Court for recommendation.  The Court has

reviewed the Motion to Dismiss, Plaintiff's Response, the entire case file, and the

applicable law and is sufficiently advised on the issues.  For the reasons set forth below,

the Court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss [Docket No. 38]

be **GRANTED in part and DENIED in part**.

# I. STATEMENT OF THE CASE

## A. Factual Background

The following facts are alleged in Plaintiff's Complaint [Docket No. 3]. At the time of the incidences giving rise to Plaintiff's claims, he was incarcerated at the Arkansas Valley Correctional Facility ("AVCF"). *Complaint*, p. 2. Because of the procedural posture of the case, the Court accepts all well-pleaded factual allegations as true.

On November 16, 2004, Plaintiff testified at a disciplinary hearing regarding another prisoner, inmate Castanon. *Id.* at 6. Defendant Ritter was the presiding Hearing Officer. *Id.* at 7. Defendant Steinbeck was the Colorado Department of Corrections ("CDOC") disciplinary officer who prosecuted the hearing. *Id.* at 8. During the relevant time period, Plaintiff alleges that the Code of Penal Discipline ("COPD") regulations required as follows: (1) "[t]he Hearing Officer or Board shall administer an oath or affirmation to all parties testifying in a hearing," and (2), a prisoner must be informed that, "any statement that he made could be used against him and be the basis of future COPD and/or criminal charges." *Id.* at 7. Plaintiff alleges that Defendant Ritter failed to adhere to either COPD regulation at the November 16, 2004 hearing. *Id.* at 7.

On November 19, 2004, based on Plaintiff's testimony at the November 16, 2004 hearing, Defendant Steinbeck initiated two COPD charges against Plaintiff. *Id.* at 8. The charges carried the possibility of a loss of good time credits, punitive segregation, and a loss of privileges. *Id.* at 8–9. Plaintiff was served with a Notice of Charges on November 19, 2004. *Id.* at 9. On November 23, 2004, Plaintiff attended a disciplinary hearing regarding the charges against him. *Id.* at 9. Defendant Ritter was the prosecuting officer.

*Id.* at 10. At the hearing, the presiding officer, Lt. P. Hijar—who is no longer employed by the CDOC—did not permit Plaintiff to present various forms of evidence in order to defend the charges. *Id.* at 9–10. At the hearing, Defendant Ritter allegedly stated, to the best of Plaintiff's recollection:

> Let me put this issue to rest. My name is Lt. Timothy Ritter, I am the disciplinary officer in this case. I was the Hearing Officer in Case No: 050724. Because Mr. Phillips requested the hearing tape I went back and reviewed it, and I hereby state under oath and penalty of perjury that I did administer the oath or affirmation to him and I did fully advise Mr. Phillips of his rights before he testified for inmate Castanon.

*Id.* at 10–11. Allegedly, the hearing officer refused to listen to the tape of the Castanon hearing, stated he accepted Defendant Ritter's statements, and found Plaintiff to be in violation of COPD regulations. *Id.* at 12, 48. The Hearing Officer imposed a penalty of a loss of twenty days of good time credits and forty days of loss of privileges. *Id.* at 48.

Plaintiff appealed the decision of the Hearing Officer. *Id.* at 12. Associate Warden Steve Hartley reviewed the record and found that Plaintiff was not sworn in at the November 16, 2004 hearing. *Id.* at 13. On December 22, 2004, the findings against Plaintiff were reversed. *Id.* at 12. All charges and penalties were expunged from Plaintiff's record. *Id.* at 13, 51.

On or about January 26, 2005, Plaintiff mailed a letter to the Colorado Attorney General's Office regarding "Official Misconduct of CDOC staff, ie. [sic] Perjury on COPD Report and Tape." *Id.* at 13. On or about February 11, 2005, Plaintiff mailed a copy of his "Statutory Notice to Sue." *Id.* at 13. On the same day, Plaintiff mailed a letter requesting the "filing of Criminal Charges against Tim Ritter and Robert Steinbeck" to the Crowley

County District Attorney. *Id.* at 14. It does not appear from Plaintiff's Complaint that any action was taken against Defendants based on Plaintiff's requests.

In December 2005, inmates Michael Cusick and David Ramsey were charged with assault on inmate Jayson Dieter. *Id.* at 16. Both inmates were prosecuted by Defendant Steinbeck and were found guilty by Defendant Ritter. *Id.* at 16–17. In January 2006, Plaintiff learned of information leading him to believe Defendant Steinbeck had allegedly engaged in conduct during the assault hearing that caused inmates Cusick and Ramsey to believe Plaintiff was the "confidential informant - rat - snitch [sic] against them." *Id.* at 17. Plaintiff approached Defendant Steinbeck regarding this information and asked why Defendant Steinbeck had "falsely labeled [Plaintiff] an informant." *Id.* at 17–18. Defendant Steinbeck allegedly responded, "That's what you get for trying to have criminal charges filed against me and Ritter and for wanting to be such a hot shot jailhouse lawyer." *Id.* at 18.

Based on this information, on January 23, 2006, Plaintiff filed a grievance against Defendants Steinbeck and Ritter. *Id.* at 18. On January 27, 2006, Plaintiff was assaulted by three or more inmates who allegedly said, among other things, "[E]ven the police said you snitched on Mickey." *Id.* at 19.

## B. Procedural Background

On December 8, 2006, Plaintiff, who is proceeding *pro se*, filed his Complaint against Defendants in their official and individual capacities alleging denials of various constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff makes five separate claims, although many are interrelated and contain multiple alleged constitutional violations.

In Claim One, Plaintiff alleges a denial of due process pursuant to the Fifth and Fourteenth Amendments based on Defendants' alleged conduct at the November 16, 2004 hearing involving charges against inmate Castanon. *Complaint*, p. 24 [Docket No. 3]. Claim Two alleges due process violations by Defendant Steinbeck occurring at the November 23, 2004 hearing involving charges against Plaintiff. *Id.* at 25–27. In addition to alleged due process violations, in Claim Two Plaintiff also asserts a violation of his constitutional rights under the Equal Protection Clause based on unspecified actions. *Id.* In Claim Three, Plaintiff alleges due process violations by Defendant Ritter occurring at Plaintiff's November 23, 2004 disciplinary hearing. *Id.* at 28–30. Plaintiff additionally alleges violations of the Equal Protection Clause in Claim Three, again based on unspecified actions. *Id.* In Claim Four, Plaintiff alleges a violation of his First and Fourteenth Amendment right of access to the courts. In Claim Five, Plaintiff alleges First Amendment violations, Fifth and Fourteenth Amendment due process violations, Eighth Amendment violations, and violations of the Privileges and Immunities Clause of the United States Constitution. *Id.* at 33–38. Plaintiff seeks injunctive and declaratory relief, monetary damages, and costs. *Id.* at 41–42. Many of the alleged facts that form the basis for Plaintiff's individual claims are interrelated, and thus the Court analyzes the claims together where appropriate.

In their Motion to Dismiss [Docket No. 39], Defendants assert various defenses to Plaintiff's allegations. Defendants first argue that sovereign immunity shields them from liability for actions taken in their official capacities. *Motion to Dismiss*, p. 4. Defendants further assert that the statute of limitations bars all of Plaintiff's claims. *Id.* at 4–6.

Additionally, Defendants attack the sufficiency of the factual allegations in the Complaint as to Plaintiff's due process, equal protection, First Amendment, Fifth Amendment, and Eighth Amendment claims. *Id.* at 6–13. Defendants also assert a defense based on 42 U.S.C. § 1997e(e), the Prison Litigation Reform Act ("PLRA"). *Id.* at 13–14. Finally, Defendants assert blanket qualified immunity for all claims raised by Plaintiff. *Id.* at 14–17. Unfortunately, Defendants' arguments do not always address the claims raised by Plaintiff.

In his Response [Docket No. 61], Plaintiff essentially challenges the factual and legal premises on which Defendants' arguments are based. Often, Defendants' and Plaintiff's arguments fail to squarely meet, however, the Court has attempted to address all parties' arguments where prudent and possible.

## II.    DISCUSSION

### A.    Legal Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

An attack on a Complaint based on sovereign or qualified immunity is evaluated under Fed. R. Civ. P. 12(b)(1). *Meyers v. Colo. Dept. of Human Servs.*, 62 Fed. Appx. 831, 831 (10th Cir. Jan. 6, 2003) (unpublished decision). Rule 12(b)(1) motions to dismiss generally take one of two forms. *See, e.g.*, *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). First, a defendant may make a facial attack on the sufficiency of the Complaint's allegations as to subject matter jurisdiction. *Id.* Alternatively, a defendant may challenge the actual facts upon which subject matter jurisdiction is based. *Id.*

Here, Defendants have made a facial attack on the Plaintiff's allegations on the basis of sovereign and qualified immunity. *Motion to Dismiss*, p. 4, 14–17 [Docket No. 39].

When reviewing a facial attack on a Complaint pursuant to Fed. R. Civ. P. 12(b)(1), a court will accept the allegations of the Complaint as true. *Holt v. United States*, 46 F.3d 1000, 1001 (10th Cir. 1995).

## B. Legal Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A court reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must construe the allegations in the Complaint in the light most favorable to the plaintiff. *See, e.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964–65 (2007) (internal citations omitted). The facts in the Complaint must sufficiently support all elements necessary to establish entitlement to relief under the legal theory proposed by the plaintiff. *Lane v. Simon*, 495 F.3d 1182 (10th Cir. 2007). In addition, the allegations of a *pro se* litigant must be construed liberally by a court reviewing a Rule 12(b)(6) motion to dismiss. *See Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal citations and quotations omitted)).

Despite this relaxed pleading standard, a *pro se* plaintiff retains "the burden of

alleging sufficient facts on which a recognizable legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This burden remains because a "*pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

## C. Sovereign Immunity Defense

Plaintiff has filed suit against Defendants in both their individual and official capacities. *Complaint*, p. 1 [Docket No. 3]. Defendants assert that they are immune from liability in their official capacities. *Motion to Dismiss*, p. 4 [Docket No. 39].

A suit against public employees in their official capacities is considered to be a suit against the state itself. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suits for damages against the state and its agencies. U.S. Const. amend. XI; *Will*, 491 U.S. at 66; *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994). A state can waive its immunity if it so chooses. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). However, the State of Colorado has not done so in this case. *See generally* Colo. Rev. Stat. § 24-10-106 (2006).

Plaintiff relies upon Colo. Rev. Stat. § 24-10-106(1)(b), which states in the relevant part: "(1) . . . Sovereign immunity is waived by a public entity in an action for injuries resulting from: . . . (b) The operation of any . . . correctional facility, as defined in § 17-1-102 C.R.S., or jail by such public entity." *Id.* Plaintiff overlooks an important subsection. § 24-10-106(1.5)(a) provides:

The waiver of sovereign immunity created in paragraphs (b) and (e) of

8

subsection (1) of this section *does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction, and such correctional facility or jail shall be immune from liability as set forth in subsection (1) of this section.*

§ 24-10-106(1.5)(a) (emphasis added). For these reasons, all of Plaintiff's monetary damages claims against Defendants in their official capacities are barred by sovereign immunity.

To the extent Plaintiff seeks injunctive relief under § 1983, his claims against Defendants are also barred. While a claim to establish *personal* liability under § 1983 only requires a showing that the individual, acting under color of state law, deprived a plaintiff of his constitutional rights, a greater showing is required in an official-capacity action. *Graham*, 473 U.S. at 166. "[I]n an official-capacity action . . . a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation . . . . [T]hus, in an official capacity suit, the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981); *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)).

Plaintiff has made no allegations that a particular "policy or custom" of Defendants, the Colorado Department of Corrections, or the State of Colorado, resulted in the alleged constitutional violations. As a result, Plaintiff cannot maintain an action against Defendants in their official capacities. The Court respectfully recommends that Defendants' Motion to Dismiss be granted with respect to their sovereign immunity defense and all claims against Defendants in their official capacities should be dismissed. However, the Court must still address the claims against Defendants in their individual

capacities, as § 1983 permits plaintiffs to establish liability of defendants who, acting under color of state law, deprived a plaintiff of his constitutional rights. *Id.*

### D.    Statute of Limitations Defense

Defendants assert that all of Plaintiff's claims are barred by the two-year statute of limitations, relying on the fact that Plaintiff's Complaint was filed by the Denver District Court clerk on December 26, 2006. *Motion to Dismiss*, p. 4–6 [Docket No. 39].  Plaintiff relies on the mailbox rule, arguing that he handed his Complaint to prison guards on December 8, 2006. *Plaintiff's Response*, p. 15–17 [Docket No. 61].  The only claims for which Plaintiff may face a statute of limitations issue are those relating to Defendants' alleged denial of Plaintiff's due process rights at the November 16, 2004 and November 23, 2004 COPD hearings—Claims One through Three.  The remainder of the actions Plaintiff complains of—contained in Claims Four and Five— occurred well within the two-year statute of limitations imposed by Colo. Rev. Stat. § 13-80-102(1)(g), whether his Complaint is deemed filed on December 8, 2006 or on December 26, 2006.

Claims brought pursuant to 42 U.S.C. § 1983 are subject to a two-year statute of limitations.  Colo. Rev. Stat. § 13-80-102(1)(g); *see also Hunt v. Bennett*, 17 F.3d 1263, 1265–66 (10th Cir. 1994).  The statute begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 1266.  However, the Supreme Court has held that a *pro se* prisoner's notice of appeal is considered "filed" at the time it is given to prison officials.  *Houston v. Lack*, 487 U.S. 266, 276 (1988).  The *Houston* mailbox rule applies to a prisoner's civil rights complaint as well.  *Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005) ("[A]n inmate who places a federal civil rights

complaint in the prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court." (citing *Houston*, 478 U.S. at 276)).

There are two ways an inmate can establish the filing date of his Complaint. *Id.* at 1165. The first is to use the prison's legal mail system, which logs all legal mail through straightforward and reliable procedures. *See id.* (internal citations omitted). If a prison has an available legal mail system, the prisoner must use it to prove compliance with the mailbox rule. *Id.* The second method a prisoner can use, in the event the prison does not have a legal mail system, is to "submit a declaration [in compliance with 28 U.S.C. § 1746] or notarized statement setting forth the [complaint's] date of deposit with prison officials and attest that first-class postage was pre-paid." *Id.* (internal citations and quotations omitted).[1]

As a preliminary matter, the Court must determine when Plaintiff's due process claims accrued. *See Philpot*, 420 F.3d at 1162. Pursuant to the PLRA, prisoners must exhaust "such administrative remedies as are available" before suing over prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement applies even when the prisoner only seeks monetary damages which are unavailable through administrative channels. *See Booth v. Churner*, 532 U.S. 731, 741 (2001) ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). Although the claim generally accrues upon the date of the alleged injury,

---

[1] An appropriate declaration for statements pursuant to 28 U.S.C. § 1746 is: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." *Philpot*, 420 F.3d at 1166 (citing 28 U.S.C. § 1746).

the filing of an administrative grievance tolls the statute of limitations until the administrative remedies have been exhausted. *See Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007) ("[E]very circuit to address the issue has held that the filing of a mandatory administrative grievance tolls the statute of limitations for § 1983 and *Bivens* claims." (internal citation omitted)); *see also Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) ("[T]he statute of limitations which applied to Brown's civil rights action was tolled for the period which his available state remedies were being exhausted." (internal citation omitted)). Thus, the Court concludes that the statute of limitations did not begin to run until the date on which Plaintiff's COPD hearing appeal was decided, which was December 22, 2004.

The next inquiry is the date on which Plaintiff actually filed his Complaint. The adequacy of the AVCF legal mail system is not known to the Court at this time. However, because the Tenth Circuit recognizes an alternative manner by which to establish a filing date for purposes of the prison mailbox rule, it is unnecessary to address the AVCF system. *See Philpot*, 420 F.3d at 1165 ("[T]he 'mandatory method by which a prisoner . . . proves compliance with the mailbox rule' is to 'submit a declaration [in compliance with 28 U.S.C. § 1746] or notarized statement setting forth the [complaint's] date of deposit with prison officials and attest that first-class postage was pre-paid." (internal citations omitted)). The Court determines that Plaintiff's Certificate of Service attached to his Compliant fulfills the *Philpot* requirements. *Complaint*, p. 44 [Docket No. 3]. Additionally, Plaintiff attached two declarations in compliance with 28 U.S.C. § 1746 at different points in his Complaint, both of which state that the information contained within the Complaint

is true and correct. *Id.* at 23, 40. Thus, Plaintiff has complied with the "second mechanism for establishing a filing date for purposes of the mailbox rule," *Philpot*, 420 F.3d at 1165, and his Complaint will be deemed filed on December 8, 2006, *Complaint*, p. 44 [Docket No. 3]. Therefore, the Court concludes that the statute of limitations does not bar any of Plaintiff's claims.

### E.     Qualified Immunity Defense

Defendants assert they are entitled to qualified immunity with regard to all of Plaintiff's claims. *Motion to Dismiss*, p. 14–17 [Docket No. 39]. Qualified immunity, in certain circumstances, protects government officials from litigation when sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814–18 (1982). "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Defendants argue first that Plaintiff has not sufficiently alleged violations of a constitutional right with regard to any of his claims, and second, that none of Plaintiff's alleged constitutional rights were clearly established at the time. *Motion to Dismiss*, p. 14–17 [Docket No. 39]. As set forth below, the Court agrees with Defendants with respect to Plaintiff's due process allegations in Claims One through Three and Plaintiff's equal protection allegations in Claims Two and Three. However, with respect to Plaintiff's access to the courts and Eighth Amendment claims—Claims Four and Five—the Court finds that Plaintiff has alleged sufficient facts to survive Defendants' Motion to Dismiss.

A court analyzing a qualified immunity defense applies a two-part test. *See, e.g.*, *Butler v. City of Prairie Village*, 172 F.3d 736, 745 (10th Cir. 1999). First, the court determines whether the plaintiff has sufficiently alleged a deprivation of a constitutional right. *Id.* (internal citation omitted). If this question is answered in the affirmative, the court then determines whether the right was "clearly established." *Id.* "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver* 960 F.2d 1493, 1498 (10th Cir. 1992) (internal citation omitted).

The Court now turns to the specific allegations and causes of action as stated in Plaintiff's Complaint, and applies the two-part inquiry as described above.

### 1. Fifth Amendment and Fourteenth Amendment Due Process Claims—Claims One through Three

In Claim One, Plaintiff alleges violations of his Fifth and Fourteenth Amendment due process rights based largely on the failure of Defendants to administer the proper oath and "miranda [sic] type warning" at inmate Castanon's hearing. *Complaint*, p. 24 [Docket No. 3]. Plaintiff claims this was in violation of CDOC Administrative Regulation 150-01. *Id.* Claims Two and Three focus on both Defendants' alleged subsequent representations that they did not fail to administer the oath and warning at the Castanon hearing, which Plaintiff claims was in violation of Colo. Rev. Stat. §§ 18-8-406, -502 and CDOC Administrative Regulation 1450-01. *Id.* 25–30. As noted above, the first issue the Court must address is whether Plaintiff has sufficiently alleged a deprivation of a constitutional right. *See, e.g.*,

*MIMICS, Inc. v. Village of Angel Fire*, 394 F.3d 836, 841 (10th Cir. 2005); *Prairie Village*, 172 F.3d at 745.

A plaintiff must allege make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Public Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty or property interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184–85 (10th Cir. 2001).[2] Second, he must show the procedures utilized were inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149. Protected liberty or property " interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). While it is true "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974).

The Court must next consider whether the violations of administrative regulations

---

[2] Courts often refer to "property" interests, *see, e.g.*, *Bartell*, 263 F.3d at 1149; *Veile*, 258 F.3d at 1184–85, or "liberty" interests, *see, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974); *Sandin v. Connor*, 515 U.S. 472, 483–84 (1995), which can be created by state statue. As far as the due process analysis is concerned in this case, the distinction between "property" interests and "liberty" interests are not important, as the "analysis as to liberty parallels the accepted due process analysis as to property." *Wolff*, 418 U.S. at 557. Here, Plaintiff's due process claims focus, primarily, on prison regulations and state laws, and good time credits. *Sandin*, which concerned prison regulations, referred to "liberty" interests. *See Sandin*, 515 U.S. at 487. *Wolff*, which concerned good time credits, also discusses "liberty" interests. *See Wolff*, 418 U.S. 557. Therefore, this Court will refer to Plaintiff's asserted interests as "liberty" interests.

and criminal statutes alleged by Plaintiff confer a liberty interest upon Plaintiff that he can enforce through 42 U.S.C. § 1983.

### a.   Alleged Violations of Colo. Rev. Stat. §§ 18-8-406, -502 and CDOC Administrative Regulations 150-01 & 1450-01—Claims One Through Three

Plaintiff claims that Defendants violated various Colorado statutes and prison regulations.  He alleges that violations of Colo. Rev. Stat. §§ 18-8-406, -502 and CDOC Administrative Regulations 150-01 and 1450-01 resulted in deprivations of his due process rights under the Fifth and Fourteenth Amendments.  *Complaint*, p. 24–30 [Docket No. 3].[3]

The first issue is whether these regulations and statutes confer a protected liberty interest on Plaintiff.  *See Bartell*, 263 F.3d at 1149; *Veile*, 258 F.3d at 1184–85.  While it is true that state statutes or regulations may sometimes create protected liberty interests, the Supreme Court has limited the circumstances in which a state regulation will be construed to confer such a liberty interest upon a prisoner.  *See Sandin v. Connor*, 515 U.S. 472, 483–84 (1995).  "[T]hese interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.  Colo. Rev. Stat. § 18-8-406 makes it a crime for a public servant to issue an official written document that he knows to be false.  Colo. Rev. Stat. § 18-8-502 is Colorado's first-degree perjury statute.  CDOC Administrative Regulation 1450-01 section IV.S provides that, "DOC employees . . . shall

---

[3] To the extent that Plaintiff asserts a violation of his due process rights pursuant to the Fifth Amendment of the United States Constitution, Claims One through Three and Claim Five are defective on their face.  The Fifth Amendment right to due process applies only to conduct of federal actors.  *See Germany v. Hudspeth*, 209 F.2d 15 (10th Cir.1954); *see also Smith v. Kitchen*, 132 F.3d 43 (table) (10th Cir. Dec. 12, 1997) (unpublished decision).

not bear false witness against . . . offenders."

With respect to alleged violations of Colo. Rev. Stat. §§ 18-8-406, -502, the Court finds that neither of these provisions of the Colorado Criminal Code create a protected liberty interest. This determination is consistent with *Sandin*. Neither provision of the Colorado Criminal Code at issue bears any relationship to prison life. *See* Colo. Rev. Stat. §§ 18-8-406, -502. Nor would the violation of either statute "impose[] atypical [or] significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Nor do the statutes contain any provisions that "will inevitably affect the duration of" Plaintiff's sentence. *Id.* at 487.

Additionally, "[w]henever a plaintiff alleges that a statute implicitly creates a private right of action, the critical question is whether the legislature intended such a result." *Colo. Ins. Guar. Ass'n v. Menor*, 166 P.3d 205, 210 (Colo. Ct. App. 2007). The Court finds that neither provision of the Colorado Criminal Code at issue here was intended to create a private right of action. Nothing in the language of either statute suggests that the legislature intended to confer a private right of action for violations of these sections of the Colorado Criminal Code. *Cf. Harberson v. Hilton Hotels Corp.*, 616 F. Supp. 864, 866 (D. Colo. 1985) (holding that violations of a federal interference with the administration of justice statute, 18 U.S.C. § 1503, were not actionable by individual plaintiffs because the statute did not create a private claim for relief).

Furthermore, a § 1983 plaintiff must prove that the defendant deprived him of a right conferred by the United States Constitution and the laws of the United States. *See, e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). "Section 1983 'is not itself a

source of substantive rights, but merely provides a method for vindicating *federal* rights elsewhere conferred.'" *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (emphasis added). In *Gaines*, the plaintiff, much like Phillips here, asserted that violations of Kansas state statutes and prison regulations which occurred at the disciplinary hearings deprived him of his due process rights. *Id.* The court held that "[t]o the extent Gaines seeks relief for alleged violations of state statutes and prison regulations . . . he has stated no cognizable claim under § 1983." *Id.* (citing *Adickes*, 398 U.S. at 150; *Hill v. Ibarra*, 954 F.2d 1516, 1520 (10th Cir. 1992)).

With regard to CDOC Administrative Regulation 1450-01 section IV.S., Plaintiff has also failed to establish a protected liberty interest. Generally, prison regulations do not create constitutionally protected rights; rather, they are meant to provide guidance to officials with regard to the administration of a prison. *See Hewitt v. Helms*, 459 U.S. 460, 469–70 (1983). Although the regulation at issue does contain mandatory language, this fact is no longer dispositive. *See* CDOC Admin. Reg. 1450-01(IV)(S) ("DOC employees . . . *shall* not bear false witness against . . . offenders." (emphasis added)). As the *Sandin* Court made clear, mandatory language of a statute or regulation is not the basis for the creation of a constitutionally protected right. *See Sandin*, 515 U.S. at 483 ("[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause."). Again, the relevant question is whether a violation of the statute "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The Court determines that the particular administrative regulation

relied upon was not intended to create an enforceable protected liberty interest, but was rather intended to address the conduct of CDOC officials.

The Court additionally concludes that CDOC Administrative Regulation 150-01 does not confer a protected liberty interest. The gravamen of Plaintiff's claim in Claim One is that Defendants violated his due process rights by failing to administer the proper oath and "miranda [sic] type warning" at inmate Castanon's hearing, allegedly in violation of CDOC Administrative Regulation 150-01. *Complaint*, p. 24 [Docket No. 3]. As with the previously considered statutes and regulations, the relevant question is whether Regulation 150-01 was intended to confer a constitutionally protected liberty interest upon CDOC inmates.

As with CDOC Administrative Regulation 1450-01, the fact that the relevant portions of Regulation 150-01 contain mandatory language is not dispositive. While prior to *Sandin* such language may have been enough to confer a liberty interest, the Supreme Court has foreclosed that conclusion. This regulation—or violation thereof—does not "impose[] atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Nor does the regulation "present a case where the State's action will inevitably affect the duration of" Plaintiff's sentence. *Id.* at 487. The Court declines Plaintiff's invitation to become involved in "the day-to-day management of prisons" in the State of Colorado. *Id.* at 482. None of the requisite conditions of *Sandin* are met here; therefore, the Court must conclude that CDOC Administrative Regulation 150-01 does not confer a liberty interest upon Plaintiff.

Because the Court has concluded that Colo. Rev. Stat. §§ 18-8-406, -502 and CDOC Administrative Regulations 150-01 and 1450-01 section IV.S. do not confer a

protected liberty interest on Plaintiff, the Court need not reach the second prong of the due process inquiry. *See Bartell*, 263 F.3d at 1149. The portions of Claims One through Three relating to these statutes and regulations should be dismissed.

### b.     Deprivation of Good Time Credits

To the extent Plaintiff's assertion of due process violations can be read to concern the temporary deprivation of his good time credits, he has also failed to state a claim upon which relief can be granted.[4]

When the state creates a right to good time credits, a prisoner may acquire a constitutionally protected liberty interest in the credits such that they may not be deprived without due process. *See Wolff*, 418 U.S. at 556–57. However, Colorado's scheme involving good time credits does not confer a liberty interest upon Plaintiff.

The loss of good time credits only implicates a liberty interest if such a loss would

---

[4] As a preliminary matter, it is difficult to find that Plaintiff has standing to assert a denial of his due process rights given the factual situation presented in the Complaint. By Plaintiff's own admission, the harm he suffered—the loss of good time credits—was redressed when his record was expunged. *Complaint*, p. 51 [Docket No. 3]. The Court is concerned about two of the fundamental elements of standing. First, "injury in fact" that is "concrete and particularized;" second, injury that can "be redressed by a favorable decision." *Bronson v. Swenson*, 500 F.3d 1099, 1106 (10th Cir. 2007). The Court takes judicial notice of the facts that: (1) Plaintiff's estimated parol eligibility date is not until November 20, 2012 and (2) his estimated sentence discharge date is not until July 17, 2019. Because Plaintiff's good time credits were restored long before they would have had an impact on his sentence, it is difficult for the Court to see how Plaintiff suffered a "concrete and particularized injury" as a result of his temporary, thirty-day loss of good time credits. *Id.* Additionally, the Court is unable to determine how the alleged injury could "be redressed by a favorable decision." *Id.* Ultimately, the Court is left to assume that there may be a cognizable, monetary harm suffered by Plaintiff for the thirty-day period in which he temporarily lost twenty days of good time. While the Court struggles to determine how such a value could be proven, it nevertheless will assume, without deciding, for the purposes of the Defendants' Motion to Dismiss <u>only</u>, that there may be some "injury in fact" associated with such a situation. In addition, the Court notes that § 1983 is not the proper vehicle for a prisoner who seeks restoration of good time credits, as a petition for writ of *habeas corpus* is the proper vehicle for seeking that remedy. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). Because the credits have been restored, Plaintiff likely would not have standing to assert this claim through a *habeas* petition, as there is no injury that could "be redressed by a favorable decision." *Bronson*, 500 F.3d at 1106.

"inevitably affect the duration of [the plaintiff's] sentence." *Sandin*, 515 U.S. at 487. Under Colorado law, for persons sentenced for crimes committed after July 1, 1985, "(3) . . . good time authorized by this section shall not vest and may be withheld or deducted by the department." Colo. Rev. Stat. § 17-22.5-301(3). Furthermore, good time credits do not affect an inmate's release date, but rather only affect the date on which the inmate is considered for parole. *See Fultz v. Embry*, 158 F.3d 1101, 1103 (10th Cir. 1998). An inmate's release on parole is purely discretionary. *See Thiret v. Kautzky*, 792 P.2d 801, 805 (Colo. 1990) (explaining Colorado's parole scheme and observing that only those inmates serving sentences for crimes committed on or after July 1, 1979, but before July 1, 1985, are entitled to mandatory parole). Because Plaintiff is not eligible for parole until November 2012, *see supra* note 4, the temporary loss of his good time credits did not "inevitably affect the duration" of his sentence. *Sandin*, 515 U.S. at 487. Therefore, Plaintiff has not established that the temporary deprivation of his good time credits implicated any constitutionally protected liberty interest.

Even assuming that Plaintiff *does* have a liberty interest in his good time credits, it is plain from his own pleadings that he was afforded all the process he was due, and suffered no harm from the alleged actions of Defendants. *See Complaint*, p. 9–13, 51, 65 [Docket No. 3]; *see generally Wolff*, 418 U.S. 539.

The *Wolff* Court held that prisoners in disciplinary hearings are entitled to fewer due process rights than free citizens. *Wolff*, 418 U.S. at 560. Prisoners must be given written notice of the charges against them, a reasonable opportunity to present exculpating evidence, and be provided with a written statement by the factfinders regarding the

evidence relied upon and the reasons for taking disciplinary action. *See id.* at 564–66. The Supreme Court further held the state may remedy due process violations by providing adequate post-deprivation remedies. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.").

Here, Plaintiff was provided with written notice of the charges against him. *Complaint*, p. 9 [Docket No. 3]. To the extent that Plaintiff alleges the hearing officer inhibited his right to present evidence, this Court, in accord with the Supreme Court's command in *Wolff*, gives deference to the discretion of prison officials regarding the presentation of evidence in disciplinary proceedings. *See Wolff*, 418 U.S. at 566 ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence."). Additionally, Plaintiff was provided with written notice of the hearing officer's findings and the evidence upon which the officer relied. *Complaint*, p. 11–12, 48 [Docket No. 3]. Therefore, with regard to the disciplinary proceeding against Plaintiff, he was provided all the process he was due under *Wolff*.

However, assuming *arguendo* that the procedures utilized in Plaintiff's disciplinary hearing were *not* in accordance with the Constitution's due process requirements, on appeal from the determination of the hearing officer, the charges against Plaintiff were dismissed and his good time credits were restored. *Id.* at 51. This is "a meaningful

postdeprivation remedy," and is constitutionally satisfactory. *See Hudson*, 468 U.S. at 533.

In summary, Plaintiff has failed to assert a liberty interest associated with Colo. Rev. Stat. §§ 18-8-406, -502, or CDOC Administrative Regulations 150-01 and 1450-01. Moreover, Plaintiff has failed to adequately allege a due process violation regarding the temporary deprivation of his good time credits. Therefore, the Court need not determine whether these rights were clearly established. *See, e.g.*, *Angel Fire*, 394 F.3d at 841; *Prairie Village*, 172 F.3d at 745. The Court respectfully recommends that Plaintiff's due process claims set forth pursuant to Claims One through Three be dismissed.

### 2. Fourteenth Amendment Equal Protection Claim—Claims Two and Three

In addition to the due process violations alleged in Claims Two and Three of Plaintiff's Complaint, he also asserts violations of the Equal Protection Clause. *Complaint*, p. 25, 28 [Docket No. 3]. Once again, the first question the Court must address is whether Plaintiff has sufficiently alleged a deprivation of a constitutional right. *See, e.g.*, *Angel Fire*, 394 F.3d at 841; *Prairie Village*, 172 F.3d at 745. The Equal Protection Clause of the Fourteenth Amendment states: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993). "[W]hen a prison regulation impinges on inmates'

constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff's equal protection claims are difficult to ascertain. To begin, he alleges denial of equal protection under the Eighth Amendment. *Complaint*, p. 25, 28 [Docket No. 3]. No such right exists under the Eighth Amendment of the United States Constitution. *See generally* U.S. Const. amend. VIII.[5] More importantly for purposes of the pending Motion to Dismiss, however, Plaintiff fails to allege *any* facts to suggest that he is a member of a suspect classification, that he was treated differently from other similarly-situated prisoners, or that Defendants' actions did not serve a legitimate penological purpose, such that a claim under the Equal Protection Clause of the Fourteenth Amendment would be sufficiently stated.[6] The Court need not look to whether the right was clearly established at the time of the alleged deprivation because Plaintiff has failed to allege any facts to support an equal protection argument. *See, e.g.*, *Angel Fire*, 394 F.3d at 841; *Prairie Village*, 172 F.3d at 745. The Court therefore recommends that the equal protection claims set forth in Claims Two and Three of the Complaint be dismissed.

### 3. Eighth Amendment Claim—Claim Five

In Claim Five of his Complaint, Plaintiff alleges that Defendants' actions constituted

---

[5] The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations and quotations omitted). This is not the same as "equal protection" under the Constitution. To the extent that Plaintiff attempted to assert an Eighth Amendment "failure to protect" claim, those issues will be addressed in Part II.E.3., *infra*.

[6] If anything, Plaintiff's Complaint suggests he was treated *similarly* to other inmates. *Complaint*, p. 22 [Docket No. 3]. ("Upon information and belief, both Defendants . . . have curried the favor of *various* inmates by: . . . 3) by [sic] causing procedural errors before or during the COPD hearing to allow and justify a reversal on appeal." (emphasis added)).

24

"deliberate indifference to the welfare and safety" of Plaintiff in violation of the Eighth Amendment. *Complaint*, p. 34 [Docket No. 3].

In their Motion to Dismiss, Defendants misconstrue the gravamen of Plaintiff's Eighth Amendment claims. While Plaintiff does allege that he was assaulted, *id.* at 19–20, 7, this allegation is not the entire basis for his claim. Throughout his Complaint, Plaintiff alleges that Defendants labeled him as an informant, rat, or snitch. *Id.* at 17–18, 33–34, 35. Plaintiff further alleges that Defendants knew, or should have known, that these actions were detrimental to Plaintiff's safety. *Id.* at 35. Accepting these allegations as true and construing them in the light most favorable to Plaintiff, *GFF Corp.*, 130 F.3d at 1384, the Court considers whether Plaintiff's Eighth Amendment allegations should survive Defendants' Motion to Dismiss.

The Court first considers whether Plaintiff has sufficiently alleged the violation of a right. *See, e.g.*, *Angel Fire*, 394 F.3d at 841; *Prairie Village*, 172 F.3d at 745. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). Prison officials have a duty to "provide humane conditions of confinement . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "Labeling a prisoner a snitch violates a prisoner's constitutional rights under the Eighth Amendment . . . ." *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001); *see also Northington v. Marin*, 102 F.3d 1564, 1566 (10th Cir. 1996) (affirming a judgment for damages resulting from an assault on a prisoner against prison officials who

labeled the prisoner a snitch).

The next issue is whether the right was "clearly established when the alleged violation occurred." *Angel Fire*, 394 F.3d at 841. In 1994, the Supreme Court stated that "it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer*, 511 U.S. at 832 (quoting *Helling*, 509 U.S. at 31). Furthermore, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotations and citations omitted, alteration in original). The Tenth Circuit in 2001 recognized that there is "no dispute that the law . . . addressing this issue [is] well-established . . . ." *Benefield*, 241 F.3d at 1271. "In *Northington*, we specifically held that labeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate." *Id.* The *Medina* standard requiring the existence of a Supreme Court or Tenth Circuit decision on point is satisfied here. *See Medina*, 960 F.2d at 1498.

Because Plaintiff has sufficiently alleged a violation of a clearly established Eighth Amendment right, the conduct set forth in Claim Five adequately states a claim upon which relief can be granted. Accordingly, the Court recommends that Defendants' Motion to Dismiss be denied as to Claim Five.

### 4. First and Fourteenth Amendment Access to the Courts Retaliation Claim—Claims Four and Five

In Claims Four and Five, Plaintiff alleges that Defendants retaliated against him for exercising his constitutionally protected right of access to the courts. *Complaint*, p. 31

[Docket No. 3]. Although Claim Four is Plaintiff's access to the courts claim, many facts relevant to the retaliation claim are included within Claim Five. *See id.* at 33–38. In their Motion to Dismiss, Defendants do not even recognize Plaintiff's retaliation claims, and simply state that Plaintiff's First Amendment claims are "difficult to decipher." *Motion to Dismiss*, p. 10 [Docket No. 39]. However, a liberal reading of the Complaint—which Plaintiff is entitled to as a *pro se* litigant—reveals that it states a valid claim for retaliation in response to Plaintiff's exercise of his First and Fourteenth Amendment right of access to the courts. *See Erickson*, ___ U.S. at ___, 127 S. Ct. at 2200 ("A document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal citations and quotations omitted)).

As with Plaintiff's previous claims, the first question the Court considers is whether Plaintiff has sufficiently alleged the violation of a right. *See, e.g.*, *Angel Fire*, 394 F.3d at 841; *Prairie Village*, 172 F.3d at 745. The Court finds Plaintiff has done so. "It is . . . established beyond a doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The state may not burden or impinge upon this right without asserting legitimate, penological interests. *See Turner*, 482 U.S. at 89. Furthermore, "prison officials may not harass or retaliate against an inmate for exercising his right of access to the courts." *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996).

One Circuit Court has dealt with a fact scenario similar to the one alleged by Plaintiff. In *Valandingham v. Bojorquez*, the plaintiff essentially alleged that prison officials

"conspired . . . to label [him] a 'snitch' in retaliation for his legal endeavors on behalf of himself and other prisoners." 866 F.3d 1135, 1136 (9th Cir. 1989). The court held that not only had the plaintiff stated a valid Eighth Amendment claim, but that he also stated a claim for a violation of his right to access the courts. *Id.* at 1138.

Plaintiff sufficiently alleges a violation of his Eighth Amendment rights by alleging that Defendants labeled him a "snitch." *See supra* Part II.E.3. Additionally, Plaintiff alleges that Defendant Steinbeck, in response to Plaintiff's question as to why he labeled him a "snitch," told Plaintiff: "That's what you get for trying to have criminal charges filed against me and Ritter and for wanting to be such a hot shot jailhouse lawyer." *Complaint*, p. 17–18 [Docket No. 3]. Plaintiff's allegation of a violation of his Eighth Amendment rights in response to his exercise of his constitutionally protected right of access to the courts is far more than a "*de minimus* level of imposition." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). Therefore, Plaintiff has sufficiently alleged a retaliatory violation of his right of access to the courts. *See, e.g.*, *Penrod*, 94 F.3d at 1404.

Because Plaintiff has sufficiently alleged a deprivation of his constitutional rights, the next consideration is whether the right was "clearly established when the alleged violation occurred." *Angel Fire*, 394 F.3d at 841 (internal citation and quotations omitted). In 1977, the Supreme Court recognized that the right of prisoners to access the courts was well established. *Bounds*, 430 U.S. at 821 (citing *Ex parte Hull*, 312 U.S. 546 (1941)). The Tenth Circuit recognized in 1990 that prison officials may not retaliate against a prisoner who exercises his right of access to the courts. *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). These precedents satisfy the *Medina* standard requiring the existence

of a Supreme Court or Tenth Circuit decision on point. *Medina*, 960 F.2d at 1498.

Therefore, this Court concludes that Plaintiff's allegations, if true, establish that Defendants violated Plaintiff's rights, and such rights were clearly established at the time the alleged conduct occurred. The Court respectfully recommends that Defendants' Motion to Dismiss be denied with respect to the alleged violations of Plaintiff's right of access to the courts contained in Claims Four and Five of the Complaint.[7]

### F.     PLRA Defense

Defendants argue that Plaintiff's claims for compensatory damages are barred by the PLRA. *Motion to Dismiss*, p. 13–14 [Docket No. 39]. They rely on subsection (e) of the PLRA, which states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff counters by arguing that he has not alleged any mental or emotional harm, and therefore the PLRA is inapplicable. *Plaintiff's Response*, p. 28 [Docket No. 61]. While Defendants are correct in their argument that compensatory damages for mental or emotional harm require a prior showing of physical harm under PLRA subsection (e), the issue presented in this case is more complicated than asserted by the parties.

---

[7] Claim Five also appears to contain another alleged due process violation, and an alleged violation of the Privileges and Immunities Clause of U.S. Const. art. IV, § 2, cl. 1. With respect to the due process claim, Plaintiff has failed to set forth any facts that could satisfy the standards discussed *supra* Part II.E.1. To the extent that Claim Five asserts a due process claim, it should be dismissed. Additionally, Plaintiff fails to state a claim under the Privileges and Immunities Clause. The Privileges and Immunities Clause is designed to place "citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 296 (1998). Here, Plaintiff has failed to allege that he suffered any adverse action based on his citizenship in a particular state. To the extent that Claim Five asserts a violation of the Privileges and Immunities Clause, it should be dismissed.

The Tenth Circuit has had few occasions to consider the scope of § 1997e(e)'s requirement of a prior showing of physical harm. In *Perkins v. Kansas Dept. of Corrections*, the Tenth Circuit remanded the case to the district court to determine whether § 1997e(e) barred compensatory, punitive, and nominal damages. 165 F.3d 803, 807–08 (10th Cir. 1999). The court there expressed doubt as to subsection (e)'s applicability regarding nominal and punitive damages. *Id.* at 808 n.6 ("The plain language of § 1997e(e) applies only to actions 'for mental or emotional injury.' While a claim for compensatory damages would clearly be barred in the absence of any showing of physical harm, *it is not clear that a claim for either punitive or nominal damages would also be barred.*" (emphasis added)). Additionally, noting that only two Circuits at the time had considered whether § 1997e(e) limited claims for injunctive relief, the *Perkins* court held that § 1997e(e) does not bar claims for injunctive relief. *Id.* at 808.

Before the District Court in *Perkins* could address the issue on remand, another Tenth Circuit court considered the scope of § 1997e(e). In *Searles v. Van Bebber*, the court considered whether the District Court erred in instructing the jury that it could award damages for mental or emotional injury without instructing the jury that it must first make a finding of physical injury. 251 F.3d 869, 874 (10th Cir. 2001). The appeals court held that it was error for the District Court to refuse to give an instruction requiring a finding of physical injury before compensatory damages for mental and emotional injury could be awarded. *Id.* at 877. The *Searles* court disagreed with reasoning from other Circuits to the effect that "[t]he deprivation of [constitutional] rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or mental or emotional injury he may

30

have incurred." *Id.* at 876 (quoting *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998)); *see also Rowe v. Shake*, 197 F.3d 778, 781–82 (7th Cir. 1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he might have sustained."). While disagreeing with the reasoning of the Seventh and Ninth Circuits regarding the scope of § 1997e(e), the *Searles* court nevertheless noted "[c]ommon-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money." *Searles*, 251 F.3d at 878 (quoting *Carey v. Piphus*, 435 U.S.247, 266 (1978)). The *Searles* court therefore held that § 1997e(e) does not require a prior showing of physical injury for nominal or punitive damages based on violations of a prisoner's constitutional rights. *Id.* at 879.

Based on the prior precedents of the Tenth Circuit, this Court holds that § 1997e(e) does not bar Plaintiff's claims for injunctive relief or punitive and nominal damages based on the alleged violations of Plaintiff's right of access to the courts and Eighth Amendment rights. The more difficult issue, however, is whether Plaintiff has satisfied the requirement of alleging prior physical harm with respect to Plaintiff's claims for compensatory damages against both Defendants.

Plaintiff *has* alleged physical harm in this case. Plaintiff alleges that "[o]n January 27, 2006 at about 8 p.m. . . . [Plaintiff] was attacked and severely beaten by at least three inmates who were saying: ' . . . even the police said you snitched on Mickey.'" *Complaint*, p. 19 [Docket No. 3]. The alleged Eighth Amendment and access to the courts violations are intertwined with each other, *supra* Part II.E.3, 4, and are also connected to this alleged

attack. Considering the more liberal pleading standards to which Plaintiff is held, the Court is unable to conclude that he has failed to adequately allege the requisite *prior* physical injury to satisfy the requirements of § 1997e(e).[8]

The Court respectfully recommends that Defendants' Motion to Dismiss on the basis of the PLRA defense be denied with respect to Plaintiff's access to the courts and Eighth Amendment claims stated in Claims Four and Five of the Complaint.

### III.    CONCLUSION

For the reasons set forth above, the Court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED in part and DENIED in part**. Plaintiff has stated sufficient facts to proceed on his access to the courts claim contained in Claims Four and Five of the Complaint, and his Eighth Amendment claim contained in Claim Five of the Complaint. The Court respectfully recommends that all other claims and causes of action alleged in the Complaint be **DISMISSED**.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written

---

[8] The Court also notes that the validity of subsection (e) of § 1997e is in question. At least one court has declared subsection (e) unconstitutional because it deprives an inmate of any remedy for most constitutional violations. *See Siggers-El v. Barlow*, 443 F. Supp. 2d 811, 816 (E.D. Mich. 2006) (noting most constitutional violations involve no physical harm, therefore § 1997e(e) would "render constitutional protections meaningless."). In additional to judicial suspicion regarding the constitutionality of subsection (e), the United States House of Representatives is considering a bill to strike subsection (e) from § 1997e. *See* Prison Abuse Remedies Act of 2007, H.R. 4109, 110th Cong. § 2(a) (2007). And finally, even a recent District Court decision applies a more strict reading of § 1997e(e) that did the court in *Searles. See Hawkinson v. Montoya*, 479 F. Supp. 2d 1164, 1169 (D. Colo. 2007) ("Plaintiff does not bring 'an action . . . for mental or emotional injury.' Therefore the limitation imposed—a prior showing of physical injury—cannot apply either.") In light of the doubt as to the constitutionality and continuing validity of this portion of the PLRA, the Court strongly questions whether or not § 1997e(e) should be dispositive if Plaintiff fails to make a showing of physical harm.

objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985), and also waives appellate review of both factual and legal questions, *In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199–1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:
__s/ Kristen L. Mix_____
United States Magistrate Judge

Dated: March 3, 2008